## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Rosa Collins                                      )
4365 Virginia Ave.                                )
Cincinnati, OH 45223                              )
                                                  )
**PLAINTIFF**                                     )
                                                  )
**v.**                                            )
                                                  )
Metropolitan Sewer District of Greater            )
Cincinnati                                        )
c/o Director Diana Christy                        )          **CASE NO. 1:21-cv-526**
1600 Gest Street                                  )
Cincinnati, Ohio 45204                            )          **Judge** _____
                                                  )
City of Cincinnati, Ohio                          )
c/o City Solicitor Andrew W. Garth                )
801 Plum Street                                   )          **COMPLAINT AND DEMAND FOR A**
Cincinnati, Ohio 45202                            )          **JURY TRIAL**
                                                  )
Board of County Commissioners of                  )
Hamilton County, Ohio                             )
c/o Commissioner Stephanie Summerow               )
Dumas, President                                  )
138 East Court Street, Room 603                   )
Cincinnati, OH 45202                              )
                                                  )
**DEFENDANTS**                                    )

## INTRODUCTION

1.      Rosa Collins (the "Plaintiff") brings this civil action against Defendants City of Cincinnati, the Metropolitan Sewer District of Greater Cincinnati, and the Board of County Commissioners of Hamilton County, Ohio (collectively "MSD" or "Defendants") because Defendants have taken Ms. Collins' property without due process or payment of just compensation, in violation of the Fifth Amendment and Fourteenth Amendment of the United States Constitution.

1

2.     This action arises from Defendants' operation, upkeep, and maintenance of the sewer system, which actions foreseeably and directly resulted in the June 15-16, 2019 inundation of slimy brown fluids containing sewage, ooze, muck and other foreign materials and pathogens ("sewage and muck") that directly emanated from the sewer system, including specifically the Martha and Kirby basins and the related pipes and structure that are part of, or connected with, the Consent Decree[1] project designated as CSO-125, and spread throughout, encroached upon, and invaded private properties in the areas of Virginia Avenue and Kirby Avenue in Cincinnati's Northside neighborhood. The CSO-125 failures occurred during a rain event that the structures should have been able to handle but for Defendants' operational and maintenance failures. The sewage overflows and backups spread throughout, encroached upon, and invaded private properties in Northside, including the home of Ms. Collins, and have deprived Ms. Collins of her property rights, including the right to possess, the right to use and enjoy, the right to exclude, the right to security, the right to manage, and the right to capital, including the right to dispose of her property when and how she sees fit.

3.     This action also arises from Defendants' negligent operation, upkeep, and maintenance of the sewer system that Defendants own and operate ("Defendants' sewer system" or "Sewer System"), which negligence has directly and proximately resulted in the continuing decimation of Ms. Collins' home.

4.     Ms. Collins seeks declaratory relief that Defendants have violated Ms. Collins' Constitutional rights by taking her property without due process or just compensation.

5.     Ms. Collins also seeks declaratory judgment that Defendants' negligent acts and omissions proximately caused her past and future damages.

---

[1] As used herein, "Consent Decree(s)" refer to the consent decrees entered in *United States v. Bd. of Cnty Comm. of Hamilton Cnty, Ohio, et al.*, Case No. 1:02-cv-107-MRB-KLL (S.D. Ohio).

6.      Plaintiff also seeks damages.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the United States Constitution and the laws of the United States, specifically 42 U.S.C. § 1983. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 2201 (declaratory judgment).

8.      This Court has supplemental jurisdiction, under 28 U.S.C. § 1367, over the claims that arise under the laws of the State of Ohio.

9.      This Court has personal jurisdiction over all Defendants because all Defendants are located in Hamilton County, Ohio and all are political subdivisions of the State of Ohio. Further, Defendants' acts, violations, and omissions that are the subject of this Complaint have occurred in Ohio, specifically in Hamilton County.

10.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) in that all Defendants are located in this district, the Constitutional violations alleged herein have occurred in this district, and the real property that is the subject of this Complaint is located in this district.

## DESCRIPTION OF THE PARTIES AND FACTUAL BACKGROUND

11.     Plaintiff Rosa Collins is a resident of Hamilton County, Ohio, who owns real estate and resides at 4365 Virginia Avenue, a two-level home built in 1928 with a lower level. Ms. Collins grew up in and has lived in this home since 1957, except for a period of about three years from 1970 until 1973. Prior to his death in 2020, Ms. Collins' brother, Fletcher, co-owned and lived in the home with her. Ms. Collins cared for her brother for approximately the last ten

years of his life due to his mobility restrictions and physical ailments, including a stress disorder, resulting from his service in the Vietnam War.

12.     Defendant Board of Commissioners of Hamilton County, Ohio ("the Commissioners" or "the County") is comprised of Commissioners Stephanie Summerow Dumas, Alicia Reece, and Denise Driehaus; the Commissioners are sued in their official capacities. At all relevant times, the County, has been, and still is, a political subdivision of the State of Ohio, and Defendant Commissioners are the duly constituted governing body of the County. Under state law, authority and control of the Defendants' sewer system is vested in the Commissioners.

13.     Defendant City of Cincinnati ("the City") is, and at all relevant times has been, a municipal corporation existing under the laws of the State of Ohio. Pursuant to an agreement dated April 12, 1968, and related agreement(s), the City has agreed to manage and operate Defendants' sewer system. The City is the management agency for the operation and maintenance of that system, subject to the exclusive control and direction of the Commissioners.

14.     Defendant Metropolitan Sewer District of Greater Cincinnati ("the MSD") is the entity through which the City and the County operate and maintain Defendants' sewer system. The Sewer System is comprised of: (a) sanitary and combined sewers; (b) sewer improvements and extensions; (c) pipes; (d) pumping stations; (e) basins/impoundments and related structures; (f) sewage treatment plants and facilities of the County, including those sewers and sewage treatment plants of the City; and (g) Capital Improvement Projects and other projects required to be constructed under the Consent Decrees. The MSD is a county sewer district, organized and operating under Ohio law. MSD employees are employees of the City.

15.     Defendants are governmental entities and are bound by the United States Constitution's prohibition that private property shall not be taken for public use without payment

4

of just compensation and are bound by the requirement that a citizen cannot be deprived of property without due process.

16. Each Defendant has a duty to act with reasonable care to operate and maintain the Sewer System in a manner that will not cause: (a) damage to private property, including Ms. Collins'; and (b) other foreseeable harm and loss to homeowners and occupants.

17. As part of their operation and maintenance of the Sewer System, Defendants have a duty to investigate and promptly correct operational and maintenance problems in the Sewer System and to fully and timely investigate damage to property that results from problems in the Sewer System. This operation, upkeep, and maintenance duty includes a duty to act with a reasonable degree of care in designating components of the Sewer System required by the Consent Decrees as "substantially complete," (*i.e.*, ready to be placed into **full** operation). Defendants also have a duty to provide timely and effective emergency cleanup services to homeowners and occupants that suffer and report sewer backups and similar events.

18. Defendants implement claims payment processes to consider real and personal property damage and other losses suffered by homeowners and occupants because of problems with the Sewer System, including damages and losses from "Water in Basement" claims and "Sewer Backup" claims identified by the Consent Decrees.

19. Publicly available information shows that the June 15/16 inundation and the resulting damage to Ms. Collins' real property were a foreseeable, natural, probable, direct and proximate result of Defendants': (a) certified designation of CSO-125 as "substantially complete," when Defendants knew, or should have known, that the project, because of its deficient physical condition, could not fulfill its intended functions as part of the Sewer System, e.g., could not collect, control, and transmit wastewater; (b) failures to investigate and remedy

the condition of CSO-125 and related structures; (c) operation of the Sewer System structures and components on and before June 15/16; (d) failure to provide timely and appropriate investigation of root causes of the June 15/16 inundation; and (e) failure to provide timely and appropriate emergency cleanup services and response to Northside residents in response to the June 15/16 inundation. Each of these failures, under the Constitution, has foreseeably and directly resulted in a taking of property for public use, which was done without affording Ms. Collins due process or paying her just compensation.

20.    In addition, each of the failures above, which are incorporated by reference herein, are a result of Defendants' negligent, reckless, bad faith or wanton conduct and are each a breach of Defendants' duty to operate and maintain the Sewer System in a reasonable and prudent manner to prevent foreseeable damage to property owners, such as Ms. Collins, and have directly and proximately resulted in damages.

21.    For example, the Defendants negligently, recklessly, wantonly, or in bad faith placed CSO-125 and related structures into operation despite information, available and known to Defendants, showing that the basins and their associated structures have not been properly maintained, were being negligently operated, and were physically incapable, as a result of Defendants' negligent operational decisions, of performing their intended functions as part of the Sewer System. Facts uncovered to-date show Defendants made the negligent operational decision to put CSO-125 into service in May 2019 as part of the Sewer System despite knowing the physically deficient conditions of the project (*e.g.*, pipes incapable of conveying wastewater and berms incapable of containing wastewater). In addition, Defendants negligently, recklessly, wantonly, or in bad faith deemed the project "substantially complete" before it was, in fact,

6

substantially complete. Upon information and belief, Defendants did so to avoid penalties for failing to meet deadlines imposed under the Consent Decrees.

22.     Additionally, Defendants' agents have also identified Defendants' negligent operation and/or maintenance of components of the basins and related structures as a direct and proximate cause of the June 15/16 inundation.

23.     Public officials representing Defendants have publicly recognized that Defendants are responsible for the June 15/16 inundation and committed to make "whole" all those who suffered damage because of the June 15/16 inundation. Defendants have not lived up to this commitment to make such residents whole.

24.     The June 15/16 inundation covered Ms. Collins' neighborhood and property with sewage and muck, which overwhelmed the Sewer System, and surrounded and backed up into her home, filling the first floor up to four feet high and filled the lowest level with ten feet of sewage. As a result, Ms. Collins' home has been rendered and remains unfit for habitation and other intended purposes, and Ms. Collins' home needs extensive restoration and repair.

25.     As a foreseeable, natural, probable, and direct result of Defendants' acts and omissions, Ms. Collins has also suffered and/or foreseeably will suffer the taking of her property without due process or just compensation.

26.     As a direct and proximate result of the Defendants' negligent acts and omissions, Ms. Collins has also suffered and/or foreseeably will suffer loss of use and enjoyment of her real property, stress and anxiety, annoyance and discomfort, sleep interruption, diminution in real property value, stigma damages, restoration damages (including mold remediation), exposure to mold, costs to assess her property, and other direct and consequential damages.

## DEFENDANTS' WRONGFUL ACTS HAVE CAUSED, AND CONTINUE TO CAUSE, DAMAGES AND A TAKING UNDER THE FIFTH AND FOURTEENTH AMENDMENTS

27.     Ms. Collins was awakened early on the morning of June 16, 2019 by her dog barking. Ms. Collins first thought, because of the roaring she heard, was that a tornado was tearing her house apart. She looked out the window and saw her house surrounded by sewage and muck. She later told a local news station that "it looked like my house was in a river."

28.     She discovered the fluids had entered the home's first floor and were rising when she went to check on her brother, Fletcher. His war-time injuries made it impossible to escape the inundation on his own without drowning. Emergency personnel rescued him by floating him out of the house on his mattress.

29.     The liquid sewage and muck rose more than four feet on the first floor and the lower level filled with ten feet of sewage and muck that backed up from the basement floor drain. Eight inches of sewage and muck was left behind when the liquid finally receded.

30.     The four-plus feet of sewage and muck that filled Ms. Collins' first floor and the ten-plus feet of sewage and muck that backed up in the lower level devastated her home, destroying the appliances, critical mechanicals (*e.g.*, hot water heater and furnace), wiring, cabinets, doors, and flooring.

31.     Because she does not have funds to rebuild and because Defendants have not lived up to their public commitment to make residents like Ms. Collins whole or lived up to their Constitutional obligations to pay just compensation for the taking of her property, Ms. Collins has been forced to live in the house under debilitating conditions, including during relevant times with no stove or kitchen sink, using milk crates as furniture, and making other makeshift arrangements, including for temporary heat.

32.     The inundation-caused openings in her outside and inside walls allowed animals to enter her home and move within the destruction. For example, on multiple occasions raccoons entered her kitchen and she has had to clean up animal waste from the counters.

33.     Ms. Collins' son, Michael Collins, timely reported the sewer backup to MSD. As part of its operation and maintenance of the system, Defendants have a duty to provide timely emergency cleanup services. Even though Defendants should have, in accordance with established protocol under the Consent Decrees, offered emergency cleanup immediately, Defendants did not offer timely emergency cleaning services to Ms. Collins. As a result, Ms. Collins' son spent 124 hours on cleanup and removed 8 inches of sewage and muck from the house. In fact, it took days after Defendants MSD and the City were reminded of the protocol and waited for the Defendant County's "authorization," that cleaning was finally offered to Ms. Collins. Ms. Collins promptly accepted, but due to Defendants' delay, the cleaners showed up nearly one week after the damage from the sewer backup and inundation was done. Defendants' delay exacerbated the harm to Ms. Collins' property and the threat to her health and well-being.

34.     The June 15/16 inundation has caused Ms. Collins to lose the sense of security in her home. The extensive damage to her property causes daily stress and frustration. Ms. Collins has difficulty sleeping because she fears another inundation.

35.     The June 15/16 inundation also had a profound adverse impact on Fletcher's mental and physical health. For example, following the inundation, on numerous occasions— even on days when it was not raining—Fletcher would come to his sister in a panic and insist that the waters were rising, and they needed to escape. This is the enduring memory Ms. Collins reports of the last eighteen months of her brother's life.  As his primary care giver, Fletcher's reaction has had a lasting adverse impact on Ms. Collins.

36.     Observing her brother's physical decline and observing the impact the stress and fear caused by the June 15/16 inundation had on Fletcher, continues to cause Ms. Collins great distress.

37.     Due to the extensive damage to her property left on June 16, Ms. Collins had her property assessed by a mold-testing company and by a company specializing in construction estimation, with a particular expertise in restoring property. As a direct result of the inundation and Defendants' failure to provide timely and effective emergency cleanup, high mold counts were measured in the lower and upper levels of her home, and extensive remediation of the mold is necessary before restoration of the property can begin. The mold remediation will take at least two weeks, while the immediate "build back" of her home will take approximately three weeks. Ms. Collins will be displaced from her home during that five-week period. Further, because mold is a living organism, certain remediation steps may need to be repeated to abate the toxic mold.

38.     The remediation and construction work necessary to restore and repair Ms. Collins' property will cost more than $160,000.00. Ms. Collins' other damages are presently estimated to be more than $125,000.00.

39.     In addition to suffering the June 2019 devastation, Ms. Collins is also concerned about the significant devaluation of her home, which will persist even after restoration. This adverse market value impact directly resulted from the June 15/16 inundation and because of: (a) Defendants' failure to fully investigate and disclose, in accordance with its operation and maintenance duties, which of its negligent acts contributed to the June 2019 devastation; (b) the home's close proximity to MSD's failed CSO-125 Project; and (c) the failure of the Defendants to fix, or even commit to fix, CSO-125 so as to prevent future backups and overflows, thereby

forcing sewage and muck to be routed back into the Sewer System, including the original combined sewer pipes from which CSO-125 was intended to divert such wastes.

40.     The devaluation was compounded by Defendants' listing of Ms. Collins home, without any factual basis, on a buy-out and demolition list of "flood-prone" homes. The avowed public purpose of this public listing was to acquire funds to buy-out homes, including Ms. Collins' home, for undervalued prices.

41.     On October 2, 2019, Ms. Collins and Defendants entered an "expedited claims protocol" for handling claims relating to the damages suffered by Ms. Collins and others as a result of the June 15/16 inundation. Pursuant to the protocol, Ms. Collins submitted a detailed claim to Defendants on January 3, 2020. Despite being obligated to provide a detailed written claim determination, Defendants have negligently, and without justification, failed to make an offer to fully restore Ms. Collins' real property, thereby exacerbating the harm that has resulted to Ms. Collins as a result of Defendants' other negligent acts and omissions.

42.     Plaintiff, through counsel, received a call on August 12, 2021 from counsel for Defendants informing Plaintiff that the Defendants were finished with any attempt to agree to just compensation, and it was time to move onto  the "next phase," litigation.

43.     Further, Defendants and Ms. Collins agreed to toll applicable limitations periods and other timeliness requirements for the period of June 1, 2021 through and including August 15, 2021, with an agreement not to file any claim relating to the inundation until August 16, 2021 at the earliest.

## CLAIM FOR RELIEF -- NEGLIGENCE

44.     Each of the above allegations is incorporated by reference as if fully set forth herein.

45.     Each Defendant has a duty to act with reasonable care to operate and maintain the Sewer System in a manner that will not cause damage to private property, including Ms. Collins'.

46.     Defendants have breached these duties by failing to perform operation, upkeep, and maintenance on the Sewer System with reasonable care.

47.     Defendants' breaches are the direct and proximate cause of foreseeable damages and harm to Ms. Collins, including loss of use and enjoyment of real property, annoyance and discomfort, stress and anxiety, sleep interruption, diminution in real property value, stigma damages, restoration damages (including mold remediation), costs to assess, test, and abate the mold, exposure to mold, and other direct and consequential damages (including costs necessitated by displacement during remediation and restoration). Such damages are reasonably certain to continue so long as Defendants fail to exercise reasonable care to operate and maintain their system. Defendants are liable for all such damages and harm.

## CLAIM FOR RELIEF – VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

48.     Each of the above allegations is incorporated by reference as if fully set forth herein.

49.     Property rights are fundamental, federally-protected rights; these rights include the right to acquire, use, enjoy, exclude, and dispose of the property.

50.     The Fifth Amendment of the United States Constitution guarantees that private property will not be taken for public use without just compensation and the Fourteenth Amendment protects against property right invasions without due process of law. Defendants have violated both Amendments because the takings requirements of the Fifth Amendment apply to state and local governments through the incorporation clause of the Fourteenth Amendment.

51.     Under 42 U.S.C. § 1983, any person who, under the color of any state law, deprives any citizen of any rights, privileges, or immunities secured by the Constitution and laws is liable to the citizen.

52.     Defendants, as local governing bodies, are "persons" for the purpose of 42 U.S.C. § 1983.

53.     Defendants acted under the color of state law when they failed to properly operate, upkeep, and maintain the Sewer System by virtue of their status as Ohio political subdivisions and/or as entities that are subject to the exclusive control and direction of a political subdivision.

54.     The June 15/16 inundation of sewage and muck has deprived, and continues to deprive, Ms. Collins of her property rights—including the right to possess, the right to use and enjoy, the right to exclude, the right to security, the right to manage, and the right to capital, including the right to dispose of her property if and when she sees fit to do so.

55.     The June 15/16 inundation of sewage and muck is a foreseeable, direct, natural, or probable result of the Defendants' actions, as evidenced by the Defendants' placing CSO-125 and related structures into operation despite knowing that the basins had not been properly maintained and by deeming the project "substantially complete" before the project had achieved that status.

56. The June 15/16 inundation, which surrounded and filled Ms. Collins' and her neighbors' homes, is a taking for a public purpose because Defendants have taken and used Ms. Collins' property, instead of the Sewer System, to collect, store, and transmit wastewater. Ms. Collins' property is not part of the Sewer System, and she has not in any way authorized the use of her property as part of the Sewer System.

57. To date, Defendants have not fixed the problems that caused the inundation and have told the public they may never fix the underlying problems. As a result, Ms. Collins is left with a fear of recurrence, which deprives her of the use and enjoyment of her property.

58. Fundamental property rights, guaranteed under and secured by the United States Constitution, include those that arise under state law. In relevant part, any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the property owner over it, is a taking of her property, for which a property owner has a guaranteed right of compensation. Where, as here, the encroachment of sewage and muck upon land is foreseeable, such encroachment is a public use that excludes or restricts the landowner's dominion and control over her land, and such owner has a right to compensation for the property taken. These rights are recognized under Ohio law and are protected by the United States Constitution.

59. Defendants' failures to investigate and maintain the CSO-125 Project and to disclose to the public root causes of the June 15/16 inundation directly give rise to a direct, ongoing, and immediate interference with Ms. Collins' use and enjoyment of her home and land. This interference is, alone, a taking for a public use requiring just compensation under the Fifth and Fourteenth Amendments.

60.     The decimation caused by the June 15/16 inundation is continuing and persistent. As a result, Ms. Collins has suffered and will continue to suffer damages and a deprivation of her property rights that constitute a taking of her property for public use for which she is entitled to just compensation.

61.     Further, the identification of Ms. Collins' property on a flood-prone buy-out and demolition list in a public filing constitutes the taking of private property for a public use without just compensation and has deprived Ms. Collins of property rights, including depriving her home of value.

62.     Defendants' actions have taken Ms. Collins' property without just compensation by directly and proximately contributing to, accelerating, hastening, and aggravating the deterioration and decline in value of Plaintiff's property and depriving her of property rights.

63.     Defendants have failed to fulfill their duty to pay just compensation for their continuing invasion and seizure of Ms. Collins' property, in violation of the Fifth and Fourteenth Amendments of the United States Constitution. By continuing for a period of over two years to withhold just compensation, Defendants have also deprived Plaintiff of her rights guaranteed under the Fifth and Fourteenth Amendments.

## CLAIM FOR RELIEF -- DECLARATORY JUDGMENT

64.     Each of the above allegations is incorporated by reference as if fully set forth herein.

65.     An actual controversy exists between Ms. Collins and Defendants and Plaintiff and Defendants are adverse to one another.

66.     Ms. Collins is entitled to a declaration of her rights and regarding the legal relations between her and Defendants.

67.     Ms. Collins is entitled to a declaration that Defendants breached their duty of care in the operation and maintenance of the Sewer System and proximately caused Ms. Collins' damages.

68.     Ms. Collins is also entitled to a declaration that Defendants have caused a substantial or unreasonable interference with Ms. Collins' property rights.

69.     Ms. Collins is entitled to a declaration that, pursuant to the Fifth and Fourteenth Amendments of the United States Constitution, the Defendants are liable to Plaintiff for just compensation; and under 40 U.S.C. §§ 1983 and 1988(b), Defendants are liable to Plaintiff for the attorneys' fees Plaintiff incurred in vindicating her constitutional right to just compensation.

70.     Such declaratory relief will effectively decide the parties' rights regarding these issues.

## RELIEF REQUESTED

WHEREFORE, Ms. Collins demands that judgment be entered in her favor and against Defendants as follows:

a.     Granting a declaratory judgment that Defendants' negligent acts and omissions proximately caused Ms. Collins' past and future damages;

b.     Awarding Ms. Collins all past and future damages, with interest, proximately caused by Defendants, as determined by the jury, in an amount in excess of $280,000;

c.     Granting a declaratory judgment that Defendants have violated Ms. Collins' Constitutional rights by taking her property without due process or just compensation;

d.     Awarding Ms. Collins her costs of litigation, including reasonable attorney fees and pre- and post-judgment interest; and

e.  Granting Ms. Collins such other relief as the Court deems just and proper.

Respectfully submitted,

s/ Justin D. Newman

Justin D. Newman (0080968), *Trial Attorney*
D. David Altman (0021457)
Robin A. Burgess (0096442)
*AltmanNewman Co. LPA*
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
(513) 721-2180
Fax: (513) 721-2299
jnewman@environlaw.com
*Attorneys for Rosa Collins*

## JURY DEMAND

Plaintiff demands a trial by jury for all the issues so triable.

Respectfully submitted,

s/ Justin D. Newman

Justin D. Newman (0080968), *Trial Attorney*
D. David Altman (0021457)
Robin A. Burgess (0096442)
*AltmanNewman Co. LPA*
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
(513) 721-2180
Fax: (513) 721-2299
jnewman@environlaw.com
*Attorneys for Rosa Collins*